Okay, the last case, we're back on the record. The last case for this morning is Advantage Point v. Borough of Kutztown, number 16-1892. May it please the court, Carol Vanderwood for the appellants, collectively Harley Snyder, solicitors for the Borough of Kutztown. I'd like to reserve three minutes for rebuttal. That will be granted. The issue on appeal is whether Barney Snyder is entitled to qualified immunity with respect to Advantage Point's class of one equal protection claim. A successful class of one claim has two prongs. Before you launch, there's apparently some dispute between the townships, Maxotony and Kutztown, and I'm wondering if you can tell us what the status of that is. It has resolved. The matter has been, my understanding, resolved in arbitration earlier this year. I think a decision rendered a couple of months ago. That resolves outstanding issues with respect to Maxotony's breach of the 2006 SCRA agreement, as well as the damages Kutztown was seeking with respect to that. Is that the Berks County case, or is that the York County case? There's actually two different cases. I'm not familiar with the York County case specifically, but yes, the Berks County case was a declaratory judgment action initiated by Maxotony after Kutztown informed Maxotony that they were going to seek to enforce the 2006 SCRA agreement. Once Kutztown advised Maxotony that they were going to seek to enforce this underlying agreement, which dictated the terms of the access to the sewer main, Maxotony filed a declaratory judgment action in the Berks County Court of Common Pleas, basically arguing that Kutztown must be barred from seeking to enforce it because they failed to timely invoke the arbitration provision in that agreement. And it ended up going to arbitration, and you're saying it's been resolved? My understanding is, yes, it has been resolved. Several arbitrator opinions have come out of that. And has there been a resolution of the workaround dispute? That is, Maxotony had this idea about how it was going to work around Kutztown's refusal to allow access to the sewer main. Has that been resolved? My understanding is that has been resolved and permitted, and counsel may offer some more insight into that. But yes, my understanding is that that matter has been resolved. Eventually, we're going to have to write an opinion here. If the factual landscape has changed, I think that you ought to send us a note under Rule 28J and let us know. Absolutely. We can submit advising of all of the further rulings that have happened since the complaint was filed. The complaint was filed just prior to a Commonwealth Court decision being issued with respect to, I believe, one of the appeals at issue in this case. But all of that aside, I mean, putting that aside, I think on the face of the complaint, those matters don't even need to be addressed because the allegations that are set forth in the complaint fail to establish an equal protection class of one. Normally, you would get qualified immunity, but what's striking about this case is the similarities between your fact pattern and OLEC. Why isn't OLEC on all fours? Is it because that case involved a tie-in to a water main and your case involves a tie-in to a sewer main? No, although that is a difference. I think significantly OLEC was decided in 2011, and that was prior to the Supreme Court's ruling in Iqbal v. Ashcroft, which sort of set forth more specific pleading requirements that I think this Court addressed in an unpublished but nevertheless instructive opinion in Parker Avenue cited in our brief, which discusses the elements, the specificity required to establish a class of one equal protection claim when alleging substantial severity. Did Phillips' case deal with that? Phillips also decided prior to Ashcroft v. Iqbal, which seemed to allow more general allegations, again, most specifically Bag of Holdings and Parker Avenue in the context of similarly situated, address the facts that now need to be pled under Ashcroft v. Iqbal to establish the standard. Parker Avenue was very different than this case. The complaint did not indicate that the alleged disparate treatment involved proposals that were in any way similar or in any way proper under the law. Here, the record, again, seems pretty striking that there was just no reason here for, they met all the requirements. You have no flow issues. There's just nothing in the record here to indicate that the applicant should have or could have been treated differently than the other 186, I think it was, applicants who all were granted access. Well, I'll address that, but getting back to Olick, just very briefly, Olick also was a very brief procuring opinion, and it didn't address, in addition to the pleading requirements, it also didn't address an allegation by the village or a basis by the village for why they treated the plaintiff differently in that case than others similarly situated. So there was also an absence of any rational basis in the case that the court considered that appeared on the record. What's the rational basis here? That goes to my question. I don't see it. It just seems terribly arbitrary what happened to the applicant here. Absolutely not. The applicant sought an Act 537 exemption after Maxitani initiated the declaratory judgment action in the Berks County Court of Common Pleas seeking to allow it to, asking the Berks County Court of Common Pleas to preclude Kutztown from seeking to enforce the 2006 SCRA agreement. That's the significant date, December 2013. I'm not sure that helps you, because if I understood what you just said, you said that they took advantage of their constitutional right to petition a court in a case, and that made us upset, so we're punishing them for that. That's the implication I draw from what you just said. Absolutely not. What's the proper implication to draw from what you just said? The implication is... I guess the point I'm making is, had there been something in the record to indicate, we've got your application, it has some problems, this is a large development with 300 units, it's going to cause a disruption in our flow, we don't have the capacity to handle this. There are multiple responses that your client could have given that would have put it quickly in the realm of rational response to hold up the permit or deny it, and you did none of those things. Instead, it seemed to be moving along swimmingly until what you just said happened, namely they went to court to take advantage of a legal right that they had. But that's significant, and that's a distinctive factor, because what determines or what governs the relationship between Mazzatoni and Clipstown, and what governs the right of access to Clipstown sewer line interceptor, is the 2006 SCRA agreement that Mazzatoni breached. So is your point that the they there is different? When Judge Hartman asks you, they went to court, the they in that one is not advantage point. It's Mazzatoni. Mazzatoni. Mazzatoni initiated this action, seeking to breach... And why does that make a difference? Because the implication of the question was there was a retaliation against advantage point because of going to court. Is the implication different because Mazzatoni goes to court? Well, the implication is different because the agreement that Mazzatoni sought to breach and preclude Clipstown from enforcing governed the terms of the access to the sewer line interceptor, which was at issue. And when you look in the record and you look at the letter written by the engineers for Clipstown, the April 2014 Jenkins letter, they point out some concerns that they might have had with respect to capacity. They also point out that the underlying agreement governing the relationship between the parties and governing the access to the sewer interceptor main had been breached by Mazzatoni. And why does that matter? Does it affect cost? Does it affect... It sounds like you're getting at here's a rational basis. We don't know how we're sharing responsibility and costs, etc. associated with this sewer line. Is that the point? What's the point that makes it rational for Clipstown's lawyers to say, stop, we won't let you hook into the line because we have a dispute with Mazzatoni about the line? They didn't say, stop, we won't let you. They said, we would like to get together with Mazzatoni and resolve the impact of their breach of this agreement and what that means with respect to Mazzatoni's request on behalf of Advantage Point for this Act 537 exemption. There are no other instances to show this bias of similarly situated comparators trying to get access after this lawsuit was filed. I'm not trying to waste some traffic for you, Ms. Vanderwood. I'm just trying to get you to explain what is it about the dispute with Mazzatoni that made it rational and appropriate for them to hold up and in effect say, you're not connecting to the sewer line, at least not now, because we have this dispute over here. That's the line I'm trying to get you to draw. The significance is that dispute with Mazzatoni is significant and material because the agreement that Mazzatoni breached and was seeking to foreclose Clipstown from enforcing governed the terms of Mazzatoni's citizens' access to Clipstown's sewer line interceptor. And that is based, I assume, on some... The SCRA agreement. Right, which had some discussion in it. It's not in the record, but is it fair to understand that that was a negotiated agreement that bore on the rights, responsibilities, shared obligations of the two municipalities? I do believe it is in the record attached at ECF number 90. I don't think Mazzatoni attached it to their complaint, but the SCRA agreement is in the record. Right, and they seem to... Maybe I'm wrong about this, but there was some dispute about whether we can take account of that. But from your perspective, it sounds like you think we should be able to take account of that. Well, absolutely. It's part and parcel of the issues present in this case. Specifically, it goes directly to the heart of the claims, and it's referenced repeatedly in the 344 paragraph second amended complaint. We're talking about an agreement that governs the terms of the access to Clipstown's sewer line interceptor. I don't think that can be reasonably disputed. That's addressed in some of the underlying related opinions that have been issued with respect to the dispute in this matter. I don't think that that has anything actually... That should be or can be disregarded by this court in analyzing the issue. With respect to other opinions that have come out in this matter with respect to the so-called rational basis, I do know that the Commonwealth Court in a 2015 opinion, referenced in the district court's opinion, pointed out that Clipstown did have a rational basis for questioning the certification of the Act 537 exemption request. Where did they get the idea that there's a... Because there was a footnote referenced in your reply brief where it says, quote, defendants do not dispute advantage points alleged pursuant to the third element of a class 1 that defendants' actions were intentional and lacked a rational basis. Where did the district court get that idea, that you didn't dispute it? Because I don't think it was disputed that they alleged certain facts. The question is whether or not those facts has alleged state a plausible legal protection class of 1 claim. I mean, that's a significant distinction. We're not conceding the sufficiency of the allegations. And though the sufficiency was never conceded, what was at issue was whether or not the facts as pled plausibly stated an equal protection class of 1 claim. And I think most significantly on the comparators, the absence of any comparators that sought an exemption after the declaratory judgment action was filed, which is absolutely a critical factor in this case because the agreement that was breached determined the excess. This is kind of an important point. If the district court thought you weren't disputing the issue of rational basis, is it right for you to come here and pin your argument very strongly on the assertion that we had a rational basis? Do you understand my question? I do understand your question. The district court acknowledged the grounds cited by Kutztown in its decision to not certify the exemption. So the district court had those facts in front of it. And this court in looking at the issue just has to look at whether on this record there are any conceivable facts that would support a rational basis for the actions of Kutztown. And on this record, there are. It's absolutely rational to question whether or not Mazzatoni should be entitled to access the sewer main interceptor for a large-scale development project after Mazzatoni breached the agreement that governed the terms of their access to that sewer line interceptor. And no other comparators, I mean, Mazzatoni references 186 other comparators. They only identify one with any specificity, and that is the Cedar Shopping Center project. But none of those other comparators were referenced or were identified as having sought to tie in after the breach and after the declaratory judgment action where Mazzatoni sought to bar Kutztown from enforcing the agreement. And as a result of that breach, Mazzatoni refused to convey back to Kutztown the treatment facility that they were, under the agreement, required to construct. They took control of it, refused to turn it over to Kutztown, and this resulted in about a five-year process of litigation between the parties addressing what to do in light of this breach. And the only project that came up after this breach and after the filing of the lawsuit was this Advantage Point project. And it's completely rational to question the legality of continued access to the sewer line interceptor when Mazzatoni breached the underlying agreement governing access to that sewer line. Okay, thank you, Counsel. Thank you. We'll hear on rebuttal. Thank you. May it please the Court. I'm Edward Kang. I represent the aptly plaintiff Advantage Point LP. Relating to the first question Your Honor asked about the status of the litigation between Mazzatoni and Kutztown, I think the arbitration issue has been resolved. So the dispute between Mazzatoni and Kutztown has been resolved, but the issue between Advantage Point and Kutztown has not been. I think they are discussing arrangements to have the project get going, but whether they do that right now, I don't think it impacts the case that Advantage Point has against Kutztown or the defendants. Because even if the project's approved, you've got delay damages? That's correct, Your Honor. That would be a good thing to nail down though, right? It would, except that it would just go not to the aspect of liability, but only to damages. This is kind of an odd case, I think. In the usual case, we're looking at an individual being targeted or singled out by the government. Here, we're kind of dealing with two governments going head-to-head. Is there a standing issue here? Because granted, an attorney can give Kutztown, say, advice, but it's up to Kutztown whether they accept it, go forward, go to the DEP, whatever. What's fairly traceable? What kind of injury is fairly traceable to your client, based on what the lawyers did? This case is no different than all the cases the Court earlier mentioned. It's exactly identical fact pattern. Well, it's not exactly identical, right? Because in OLEC, it was evidently taken as a given that there was no rational basis. And here, you've just heard at length Ms. Vanderwood say, there's a rational basis. How could it be that we would approve an enormous new project when the burdens, responsibilities, rights, cost sharing, et cetera, everything associated with the sharing agreement, had just been thrown out the window? It's perfectly rational for a municipality to say, we're not letting anything new come into this system until we work out the sharing agreement, which we had thought we had worked out. Now, that's their position. That sounds like a rational basis, something that wasn't in OLEC. So, you've got to address that. That's a difference, right? And a potentially very meaningful difference. Well, Your Honor, where is any evidence relating to this rational argument? That's something that you don't find in the four corners of the complaint. And this case comes at the motion to this stage unlike other cases. But you refer to those letters, right? The letters, they contain information, right? And I will address those letters, too. First, addressing this rational argument, based on the pleading standard at the motion to this stage, the court is not to pick whether one rational is more plausible than the others. What the court has to accept is whether the plaintiff has stated and pled a plausible argument. I don't know if you answered my question. I mean, we don't have to go too much further if you don't. Yes, we do, Your Honor, and because this fight between Kutztown and Mazzatoni itself is not the main issue in this case. I was addressing questions relating to... Has your client been singled out? Yes. I don't know. One could say this is a spat between two adjoining townships. Your Honor, this project is not based on this SACRA or SCRA agreement dated 2006 between Kutztown and Mazzatoni. Advantage points right to build this project and tie into the main come from the Act 537, which has been approved by the DEP. This SCRA agreement governs control and ownership of Mazzatoni Township's sewage plant that's located in Mazzatoni. Only thing that was an issue is not the plant itself, but the main line that connects between... Which was part of the SCRA, right? That was that discussion, like how they were going to share responsibility and costs associated with sewage. That's all bound up in this SCRA, right? No, Your Honor, because the agreement itself does not govern the pipe. The agreement talks about how to control and manage the plant itself. The pipe is part of the system. Their assertion is it's part of the system, but leave that aside for a moment. You said we're at the motion to dismiss stage, and so you can't think about those things. But we're not really at the motion to dismiss stage. We're at the qualified immunity stage, right? I will address the rational basis argument. And, Your Honor, the reason that, just to finish my argument relating to this SCRA agreement, the reason that agreement itself is a red herring is because the dispute, whoever wins between Mazzatoni and Kutztown, whoever wins, it will be Kutztown who will generate money and who would control this pipe. Because the fight between Mazzatoni and Kutztown has nothing to do with the pipe. When you say it has nothing to do with the pipe, there's a shared sewer system. And the agreement between the two municipalities had to do with how they were going to manage this shared resource. When you say it had nothing to do with the pipe, the pipe was part of the system, right? That's the way they're positioning it. They're saying it's at least rational for us, as a government, and as these attorneys being positioned as actors in the government by you, Advantage Point, by your suing them as state actors, to take into account mutual responsibilities which are now in dispute. Now, my question for you is, at the qualified immunity stage, not the motion to dismiss stage, but an assertion that we're immune from suit in that respect, what is wrong with a municipality saying the system we're talking about is in dispute? We can't move forward with changes to the system, especially a significant change like 300-plus new users, until we've got that worked out. What's irrational about that? It's because, Your Honor, going back to this SCRA agreement, that agreement controls the plan itself, not the pipe. And whoever wins in this dispute, Kutztown will always control the pipe and always be the sole recipient of any revenue generated from any sewage being treated by the pipe. And besides that, Advantage Point was the sole individual or person that has been singled out. Until the dispute arose, Kutztown itself, the defendants themselves, had supported this project. They had provisionally approved providing water, knowing that by providing water to this project, they would service the sewage. Doesn't that undercut your argument? Doesn't that mean Kutztown doesn't have it in for you? Kutztown is not trying to sink Advantage Point. It doesn't care whether Advantage Point is, you know, they're not trying to undermine you. They're trying to deal with a sewage management issue with a contiguous or neighboring municipality. That's not what Kutztown actually said. In the underlying litigation between Kutztown and Mazzutoni, one of the councilmen named Sire, he testified. And he said that we have no issue. And just like what I just said, we have no issue, Kutztown, we have no issue with Advantage Point project. We have no issue. We will support it. But we are using it to put pressure on Mazzutoni. And the reason that it is being used as a pawn is because, Your Honor, this project, it benefits both Kutztown and Mazzutoni. Yet it is located in Mazzutoni Township. And if you look at both municipalities geographically, Kutztown is located entirely within Mazzutoni. Right. Right. And this project is located in Mazzutoni. And the treatment plant is located at the other end of the township. And it has to go through, the sewage has to go through Kutztown to get there. But the point about that is that this project benefits Mazzutoni greatly. At the same time, it benefits Kutztown. Does that make it irrational? Or does that make it constitutionally infirm? In other words, is it possible for something to be rationally related to Kutztown's interests and also be something which would put pressure on Mazzutoni? You seem to be saying the fact that this is important to Mazzutoni, that Kutztown could use it as negotiating leverage, makes it ipso facto irrational and ill will and vindictive for them to say, you know, we've got a dispute that we've got to get worked out. Why are those things mutually exclusive? Rational reason to want to get things worked out because they ought to be worked out. And, by the way, it gives us some leverage in our negotiations for working this out. And that's what happened in the Olick case. In the Olick case, the homeowner alleged that the reason that the municipality was requiring a 33-feet easement in exchange for connecting with their water supply when requiring only 15 feet of easement from all other homeowners was because that in Olick it was alleged to be on the basis of a previous already resolved lawsuit and it was just spite, sheer spite. Here, there's no allegation that this is some previously resolved thing and it's vengeance. This is, there's an ongoing dispute and, as you put it, we've become a pawn in it. From their perspective, you know, they're saying, we're not against you, but we've got a dispute. It's ongoing and it affects this system. It's rational for us to put a stop on new users until we work it out. How is that the same as Olick where it was pure spite? Well, Your Honor, if that's the case, then everything can be viewed as rational because even the Olick case, whether the government official did it for the pure spite, which made them feel happy by denying them this water supply, it gave them some reason. It's not like they really didn't do anything. It's not like the government official in Olick case did it without any reason. They had a reason, but it was a bad reason. It was not a bad reason. And here you're saying it's a bad reason as well. And the reason it's bad is because even though they might not have any antipathy for your client directly, it's completely arbitrary and unfair for them to link your client with the dispute that they're having with Maxitani, particularly if, as you allege, I'm not saying it's true, but you allege that the whole reason they do it is because they blew the 90-day arbitration demand and the law firm's trying to protect their own interests from a malpractice lawsuit. That's correct, Your Honor. It's a bad reason and has nothing to do with the merits of the project. But if it did, then you'd have no case, right? If there was some letter or something in the file that said the flow is disrupted because of this dispute about the SCRA, we think your project is very large and it's different in scope from the shopping center we approved and the 186 residential customers, if they said anything like that, you're out of court, right? Your Honor, I agree that if there was a legitimate concern like that, then there would be a rational basis. But there isn't. You're assuring us there's nothing in the record that supports that. There isn't. And district court made the determination as well. It's all about the lawsuit. It's all about the lawsuit. That is correct, Your Honor. And going back to this Jenkins letter, which counsel mentioned, and that would demonstrate this point, when Advantage Point tried to tie in to the Kutztown main, and all it needed was a certification from Kutztown sent to the DEP saying that we have sufficient capacity for the next five years to service this project for the next five years. And what the DEP asked was just tell me yes or no. Do you, Kutztown, have the capacity to service this project for the next five years? In answering that question, what Kutztown did is it tasked its engineer to issue a letter, which is attached to the complaint, a second amendment complaint. And this letter dated April 9, 2014, says no, we do not have the capacity. Yeah. And they changed that within, what, five days?  We do have the capacity. They corrected themselves. Yes, they did. It said, yes, we have the capacity. And it just didn't change on its own. It changed it because Mazzatoni pointed out, saying, you're wrong, you have the capacity. Right. And they changed it. They came forward and said, we're wrong. And the DEP granted the certificate, and the Environmental Hearing Board overturned them. And the issue isn't that, Your Honor. They lost, right? Yes. But the issue isn't that. In April 9, the only question that was asked from Kutztown was, do you have the capacity? They misrepresented it by saying no. And six days later, they changed it because Mazzatoni pointed out. But the important thing is when they changed it by saying, yes, we agree that we were wrong, there's enough capacity to serve this project for the next five years. But it says, but before you can move forward with this project, you need to work out these issues relating to 2006 SCRA agreement. Now, put things in context. This letter comes from the engineer. Engineer. Engineer whose job is to just say yes or no. But now, engineer first who said there isn't sufficient capacity. But now he's back. You're theorizing that the engineer was the cat's paw working at the direction of the law firm. That's correct, Your Honor. In the complaint, we attest. Why would an engineering firm care about what's going on with the law firm? Because engineer works for the township. And we attest a copy of timesheets from the Barney Snyder defendants. They spent several hours drafting and reviewing and discussing this April 15, 2014 letter. Now, it begs the question, if the only question that the engineer had to answer was to either say yes or no, there is capacity, why did they have to talk to the township solicitor, I'm sorry, bar solicitor for several hours and to interject something that was unprompted by saying, before you DEP can even move forward with this project, you need to work out this issue. When you say unprompted, that sort of assumes something, doesn't it? That, in fact, your request had nothing to do with how the sewage system was being managed. That's correct, Your Honor. So you want to add 300-plus new users, and your position is that has nothing to do with how the municipalities are managing the sewage system. It's because the only question at that point was whether the pipe has sufficient capacity, and that's the only question that the DEP wanted to know. Got you. All right. Thank you, counsel. Thank you. Briefly, Your Honor mentioned the fact that Mazzatoni lost on the DEP issue with respect to the certification, and that opinion is a 2015 Commonwealth Court opinion we referenced, and in that opinion it goes to an issue that counsel started with initially where he took the position that the SCRA agreement did not govern the terms of this access to the sewer line interceptor. Can I stop you for a minute? Yes. There's a lot of sort of state lawsuits and arbitration. It's a little unclear, at least to me. Can we have docket numbers on these things? Yes. Nail this down? I will give you the citation to that. It was referenced in the district court's opinion in a footnote, but the docket number relates to the underlying Berks County. Okay. This is the Berks one. Yes. I'm sorry, no. This one dealt with the appeal from the DEP ruling. Okay. That was overturned by the EHB. Right. And then that ruling was affirmed by the Commonwealth Court. And the site for that is 2015. Which site is this? The Commonwealth Court? Commonwealth Court opinion. Okay. 2015 PA Commonwealth unpublished Lexis 757. I do note that reliance on unpublished opinions is permitted under state law for persuasive value. And I also will note that in this case the court notes and appears not to have been disputed because it can't be disputed that the SCRA agreement governed the terms of access to the SCR, I'm sorry, governed the terms of the access to the Kutztown Interceptor Main. And not only that, but it governed the allocation. And that's also a key issue when we're talking about access. Why did nobody put the SCRA agreement in the record? I understand it's a motion to dismiss, but it's referenced in the complaint. Your Honor, if I had been involved in the motion to dismiss stage, I would have put it in the record. Now, it is attached to, I think, ECF docket number 90. We cite it in, I think, our opening brief. So it is in the record as an exhibit. It was not attached by plaintiffs to the underlying second amended complaint. So I don't think there's a dispute or there can't be a dispute here on this record. And certainly it's not evidence from the facts alleged in the complaint that the SCRA agreement, which Maxitone repudiated, and that repudiation was before the Act 537 exemption request of the large-scale project made by Maxitone on behalf of Advantage Point, that the underlying agreement in that repudiation called into question whether Maxitone continued to have legally valid access to the sewer line interceptor. Not only access, whether it could be accessed, but whether the allocation terms were still valid and what impact that repudiation would have on the allocation. Did these arguments get made to the district court? Yes, and not as sufficiently or clearly as I would have liked. Why don't you point to the record where it was made? I believe Kutztown made the arguments in their motion to dismiss. And the Barley-Snyder appellants to sort of flush this out further in their reply in support of their motion to dismiss highlighted the timing of the Act 537 exemption request and also pointed the lack of similar comparators given the timing of that and the size of this project after the repudiation. So it all gets back to the repudiation of the SCRA? Yes. You don't have any evaluative statement in a letter or an email or anything that says because the SCRA has been repudiated, the Advantage Point proposal is now troubled for A, B, C, or D reasons. All you're standing on is Maxitani threw this thing into chaos by repudiating the SCRA and by Maxitani doing that, we have a right to punish Advantage Point. Absolutely that's not the case. We're not saying we have a right to punish Advantage Point. Advantage Point unfortunately just sought to get this exemption after Maxitani repudiated the breach of the agreement. But why is that a bad thing? I mean, they got the 537 exemption. They didn't. They did an end run to try and get a new main interceptor. Who's they? I'm sorry, Maxitani. Yeah, well, that's not Advantage Point. Advantage Point's trying to get their development approved, right? And all they hear is everything's copacetic, everything's fine, and they're moving along, and then all of a sudden it gets upended. And the reason it gets upended, you're telling us, you told us when you first took the podium, is because Maxitani called the SCRA into question. But Maxitani also submitted its Act 537 sewage facilities plan based on the SCRA agreement. So its Act 537 plan under state law was based on the SCRA agreement, which they then repudiated, and that agreement also governed the terms of the access to the Kutztown sewer line interceptor. So this agreement is a critical element of this case, and it's entirely rational. I mean, the theory here is that Kutztown... But you're asking us to infer the rationality. No one ever even took, you know, a half an hour to explain to Advantage Point. This is, for me, where the case turns. Maybe not my colleagues, but for me. I'm looking for some point in the case where your client tells Advantage Point that now they're not entitled to tie-in because of whatever reason, whatever legitimate reason. The reason can't be, in my opinion, speaking only for myself, the reason can't be you can't tie-in because we're mad at Maxitani. That's not valid. So I'm just looking for something, an email, a letter, something that says, Now that Maxitani has taken this litigation position, your development is going to disrupt the flow. It's too big. It's too, you know, anything. And I'm asking you, show me what that is. What do you have to offer me to assuage my concern in this regard? Well, the key fact, first of all, Advantage Point didn't seek the exemption. Maxitani did. So Advantage Point didn't seek the exemption with Kutztown. Maxitani did it on their behalf. And we have an A247 of the record, which is the supplemental appendix submitted by Maxitani addressing the April 15, 2014 letter where Mr. Jenkins stated, in addition to the allocation issues, that until the issue is resolved regarding whether or not the SCRA agreements remain in full force and effect, it would seem that the township and the MTMA's authority, Maxitani Municipal Authority's authority, to flow sewer through the Kutztown interceptor is at issue and must be resolved. And then he goes on to say that the validity of the SCRA agreement should first be addressed before this exemption is granted. And that's in the record. This is all the way back in April 15, 2014. I note that in the Commonwealth Court case that I referenced when I first got up, that Advantage Point did participate in these proceedings. They were involved throughout all these stages. They were very much aware of this letter. Their theory is that this was all part of a grand conspiracy to avoid a legal malpractice claim by the Kutztown solicitors because they had no basis to seek to enforce the SCRA agreement, something the arbitration panel later disagreed with them on. And respectfully, I think it would be a malpractice for the solicitors, for Barley Snyder, not to point out that Maxitani breached the underlying agreement that governs the terms of access and also determines the allocation amounts. And I think it would be malpractice for them not to point that out and say, listen, we have this Act 537 exemption request that was made by Maxitani, who Maxitani in turn based their Act 537 plan on this agreement. Maybe we need to step back and look at how that repudiation or breach impacts this large-scale development's access to our line. And I don't think that's unreasonable. I think in that April 15, 2014 letter, Advantage Point was put on notice through that, and they participated in further appeals related to the issue in the state court proceedings. All right. Thank you. We'll take the case under advise.